**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 28 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

AMADOR GUTIERREZ-
HERMOSILLO,

     Defendant - Appellant.

No. 97-2082

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. CR-96-329-JC)**

---

Barbara A. Mandel, Assistant Federal Public Defender (Ann Steinmetz, Federal Public Defender, with her on the briefs), Las Cruces, New Mexico, for Defendant-Appellant.

Mick I. R. Gutierrez, Assistant United States Attorney (John J. Kelly, United States Attorney for the District of New Mexico, with him on the brief), Las Cruces, New Mexico, for Plaintiff-Appellee.

---

Before **PORFILIO**, **McKAY**, and **BRISCOE**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Mr. Amador Gutierrez-Hermosillo (Defendant) was indicted on one count of violating 21 U.S.C. § 841(a)(1) & (b)(1)(B), possession with intent to distribute 100 kilograms or more of marijuana, and 18 U.S.C. § 2, aiding and abetting. Defendant pled not guilty to these charges. Defendant filed a Motion to Suppress Physical Evidence and Statements, which was denied after a hearing. See R., Vol. I, Doc. 44. After a trial by jury, Defendant was found guilty and sentenced to ninety-two months in prison and four years of supervised release. See id. Defendant is appealing the trial court's denial of his Motion to Suppress. We affirm.

## FACTS

On May 12, 1996, Defendant drove a van into the U.S. Border Patrol checkpoint on Interstate 10 between Las Cruces and Deming, New Mexico. See R., Vol. II at 7. Also present in the van were Defendant's fourteen-year-old daughter, Nora, and Javier Garcia-Chavez. The occupants of the van were questioned about their citizenship, and U.S. Border Patrol [USBP] Agent Armendariz confirmed that Mr. Gutierrez was a lawful permanent resident. See id. at 41. USBP Agent Alvarado was also present at the Border Patrol station. The van was searched and nothing illegal was found, and the van and its occupants were released. See id. at 8.

On May 13, 1996, Agent Alvarado was on patrol on New Mexico Highway

-2-

185 when he saw the van driven by Defendant the previous evening being followed by a Mazda pickup truck with a Texas license plate. See id. at 8-9. Agent Alvarado pulled the van over. The van was now driven by Javier Garcia-Chavez. Mr. Garcia was questioned about his destination and was allowed to go on his way. See id. at 9. Agent Alvarado advised other USBP agents that he had stopped the van detained the previous day at the border checkpoint. See id.

At approximately 2:00 a.m. on May 14, 1996, USBP Agent Armendariz contacted Agent Alvarado and advised him that he had located a Mazda pickup truck, potentially the one seen by Agent Alvarado on Highway 185 on May 13, in the parking lot of the Super 8 motel in Las Cruces. See id. at 49-51. The van detained at the Border Patrol station on May 12 was parked in the parking lot of the Motel 6, adjacent to the Super 8 motel. See id. at 11. The agents ascertained that the truck was listed on the Super 8 motel registration of Defendant. See R., Vol. III at 35-36. The agents received permission from the night clerk of the Super 8 to bring a drug-sniffing dog to the motel parking lot. See R., Vol. II at 11. The drug-sniffing dog alerted to the Mazda truck. See id. at 11, 50. Agent Armendariz asked the clerk at the Motel 6 located adjacent to the Super 8 if there was a party named Amador Gutierrez registered at the Motel 6. See R., Vol. III at 37. The clerk replied that there was an individual by that name at the motel. See id.

Six additional agents from the USBP and the U.S. Drug Enforcement Agency [DEA] were called to the scene. See R., Vol. II at 12; Appellant's Br. at 5. At 6:00 a.m., the eight law enforcement officers divided themselves into two groups, and one group went to each motel room registered in Defendant's name. See R., Vol. II at 12, 51. At the Super 8 motel, DEA agents Payne and Link, and USBP agents Armendariz and Torrez, went to Defendant's motel room. See id. at 29, 45. Agent Payne knocked on the door of the room, and a female answered, "Who is it?" See id. at 30. The agent replied, "[T]he police," and the door was opened. Id. The agent displayed his identification to the female, and he asked if the officers could enter the room. See id. All four agents then entered the motel room. See id.

After the officers entered the motel room, Agent Armendariz entered the bathroom, where Defendant was taking a shower, and told Defendant the officers would like to speak with him. See id. Agent Armendariz searched Defendant's clothes, which were on the floor of the bathroom. See id. at 46. Agent Torrez noticed car keys on a table inside the motel room. See R., Vol. II at 36, 45; Vol. V at 4. An officer asked Defendant if he was driving the Mazda truck, and he replied that he had borrowed the truck from a friend. See R., Vol. II at 31. Defendant was told that a drug dog had alerted to the truck, and he was asked if he would consent to a search of the truck. See id. Defendant consented to have

the truck searched.  See id.  Defendant was then read his Miranda warnings.  See

Appellant's Br. at 6; Appellee's Answer Br. at 4.[1]  The search of the Mazda truck

revealed approximately 389 pounds of marijuana hidden in a false bed of the

truck.  See R., Vol. V at 4.

## ISSUES ON APPEAL

Defendant contends that the trial court's denial of his Motion to Suppress

was in error, arguing that the evidence seized from the truck was the result of an

illegal warrantless entry into, and search of, his motel room.  See Appellant's Br.

at 13.  The government argues that the entry and search were legitimate because

Defendant's fourteen-year-old daughter gave her consent to the law enforcement

officers' entry.  See Appellee's Answer Br. at 5-6.  Defendant maintains that his

minor child, Nora, did not have the legal capacity to grant consent to enter the

motel room and that Nora's consent was not voluntary.  See Appellant's Br. at 13,

20.  Defendant argues that the warrantless entry and search violated his rights

under the Fourth Amendment and that the evidence obtained as a result of this

search, including his statements, is therefore subject to the exclusionary rule as

fruit of an illegal warrantless search.  See Murray v. United States, 487 U.S. 533,

---

[1] The Presentence Report states that Defendant was read his Miranda rights before he was told that a dog had alerted to the truck and before he was asked for permission to search the truck.  See R., Vol. V at 4.  However, Agent Payne testified at the evidentiary hearing that Defendant was not read his Miranda rights until after the officers sought his consent to search the truck.  See R., Vol. II at 37.

536-37 (1988); <u>Wong Sun v. United States</u>, 371 U.S. 471, 488 (1963).  Defendant

also contends that the prosecution withheld evidence which was material and

exculpatory and, therefore, under <u>Brady v. Maryland</u>, 373 U.S. 83, 87-88 (1963),

he is entitled to a new trial.  <u>See</u> Appellant's Br. at 32.  Defendant also argues

that the failure to disclose this evidence entitles him to a new trial because it is

newly discovered evidence, or, alternatively, that he is entitled to a new trial as an

appropriate sanction against the government for failing to reveal this evidence

pursuant to Federal Rule of Criminal Procedure 16.  <u>See</u> <u>id.</u> at 27, 30.  Defendant

also asserts that the trial court erred in not holding a hearing to determine

Defendant's competency to stand trial.  <u>See</u> <u>id.</u> at 24.

### DISCUSSION

The Fourth Amendment protects a citizen of the United States from

searches that are unreasonable.  We review the reasonableness of a warrantless

entry and search under the *de novo* standard, accepting the trial court's findings of

fact unless they are clearly erroneous.  <u>See</u> <u>United States v. McCurdy</u>, 40 F.3d

1111, 1115 (10th Cir. 1994); <u>United States v. Evans</u>, 937 F.2d 1534, 1536-37

(10th Cir. 1991) (stating that the question of objective reasonableness is a

question of law subject to *de novo* review).  If the officers reasonably believed

that they were given consent to enter the motel room by a third party with the

legal capacity to grant them admittance, then the entry is not unreasonable.  <u>See</u>

-6-

Illinois v. Rodriguez, 497 U.S. 177, 186-88 (1990); United States v. Matlock, 415 U.S. 164, 171 (1974). Additionally, any consent granted by a third party must be voluntary. See United States v. Iribe, 11 F.3d 1553, 1557 (10th Cir. 1993). "Voluntariness is a finding of fact, to be determined under the totality of the circumstances." United States v. Guzman, 864 F.2d 1512, 1521 (10th Cir. 1989).

The consent of a third party to a search of common premises is effectual if the third party has either the actual authority or the apparent authority to consent to a search. See Rodriguez, 497 U.S. at 188. Whether or not a third party has the actual authority to grant entry to law enforcement officers is determined by the test articulated in Matlock. The test is whether the third party has "mutual use of the property[,] . . . generally ha[s] joint access or control for most purposes[,] . . . and [whether] the others have assumed the risk that one of their number might permit the common area to be searched." Matlock, 415 U.S. at 171 n.7; see also United States v. McAlpine, 919 F.2d 1461, 1463-64 (10th Cir. 1990).

The Supreme Court's holding in Rodriguez delineates the proper analysis for determining whether third-party consent searches are valid under the "apparent authority" exception. Rodriguez, 497 U.S. at 186-88. Rodriguez held that the Fourth Amendment is not violated when officers enter without a warrant when they reasonably, although erroneously, believe that the person who consents to their entry has the authority to consent to this entry. See id. at 185-89; United

States v. Rosario, 962 F.2d 733, 736 (7th Cir. 1992). The determination of the reasonableness of the officers' belief is an objective one: "[W]ould the facts available to the officer at the moment . . . warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises?" Rodriguez, 497 U.S. at 188 (internal quotations omitted); United States v. Salinas-Cano, 959 F.2d 861, 865 (10th Cir. 1992) ("analysis of this subject . . . rests entirely on the reasonableness of the officer's belief").

Whether, as a matter of law, a minor could consent to the entry is a factor to consider in deciding the reasonableness of the officers' belief that their entry was authorized. "Rodriguez would not validate . . . a search premised upon an erroneous view of the law." United States v. Brown, 961 F.2d 1039, 1041 (2d Cir. 1992), citing United States v. Whitfield, 939 F.2d 1071, 1073-74 (D.C. Cir. 1991). We adopted this interpretation of Rodriguez in Salinas-Cano. See Salinas-Cano, 959 F.2d at 865-66. If the officers believed that a minor child could give consent when as a matter of law she could not, Rodriguez would not validate this search.

The two federal circuit courts that have addressed the issue of the capacity of minors to consent to searches have reached similar conclusions.[2] The Eleventh

---

[2] We also note that the Ninth Circuit, in an unpublished opinion, upheld the district court's adoption of a magistrate's conclusion that a fourteen-year-old girl could grant third-party consent. See United States v. Broaden, 116 F.3d 1486 (Table), 1997 WL

Circuit held that, as a matter of law, a minor child can give third-party consent to the entry of law enforcement officers. See Lenz v. Winburn, 51 F.3d 1540, 1548-49 (11th Cir. 1995). The Eleventh Circuit held that minors do have the capacity to give consent because: (1) legal sophistication is not required for adults to give valid consent; (2) the list of factors bearing upon the voluntariness of consent is open-ended, and "[t]he youth of the consenter, with its attendant vulnerability to coercion, is certainly among them"; (3) consent searches serve a legitimate purpose properly balanced against the possible harm of limiting a child's ability to consent; and (4) the rationale behind third-party consent does not hinge on agency, and the "compromise of the expectation of privacy is no less the case for a minor co-occupant than for an adult." Id.

The Sixth Circuit held that minors have the capacity to consent to search the family residence when the minors otherwise satisfy the requirements for third-party consent under the Matlock test. See United States v. Clutter, 914 F.2d 775, 778 (6th Cir. 1990) (holding that twelve- and fourteen-year-old boys could grant access), cert. denied, 499 U.S. 947 (1991). The Sixth Circuit noted, however, that even if the facts in Clutter did not warrant a finding of capacity to consent, they were "more than adequate to support a reasonable belief" by the officer that the children could consent. Id. at 778 n.1.

_____

345796, at **2 (9th Cir.), cert. denied, ___ U.S. ___, 118 S. Ct. 353 (1997).

We agree that minority does not, per se, bar a finding of actual authority to grant third-party consent to entry. After analyzing the relevant case law and the testimony presented at the hearing on Defendant's Motion to Suppress, we hold that the officers could reasonably believe that Nora had the authority to allow them to enter the motel room. Nora appeared to be fourteen years old, and she answered the door of the motel room. The officers knew that she was traveling in the company of her father. These facts are sufficient to establish the officers' reasonable belief that Nora had mutual use of the motel room and that Defendant assumed the risk that she would permit the officers to enter the motel room.

Nora's minority is a factor in determining the voluntariness of her consent to the officers' entry into the motel room. The trial court's determination that Nora's consent was voluntary is reviewed for clear error. See Ohio v. Robinette, ___ U.S. ___, 117 S. Ct. 417, 421 (1996). "Before a district court may admit evidence resulting from a consent search, it must determine from the totality of circumstances that (1) the defendant's consent was voluntary and (2) the search did not exceed the scope of the consent." United States v. Dewitt, 946 F.2d 1497, 1500 (10th Cir. 1991) (citing United States v. Price, 925 F.2d 1268, 1270 (10th Cir. 1991)), cert. denied sub nom. Rison v. United States, 502 U.S. 1118 (1992). The evidence is viewed in the light most favorable to the government. See United States v. Reed, 40 F.3d 1069, 1078 (10th Cir. 1994) ) (citing United States v.

McIntyre, 997 F.2d 687, 696 (10th Cir. 1993), cert. denied, 510 U.S. 1063 (1994)), cert. denied, 514 U.S. 1029 (1995).

Nora's minority is the basis for Defendant's argument that her consent to enter the motel room was involuntary. This is indicated by the transcript of the suppression hearing and Defendant's appellate brief. See R., Vol. II at 61-62; Appellant's Br. at 16-22. In addition to Nora's minority, Defendant's counsel did mention other circumstances bearing on voluntariness, such as the early hour of the confrontation and the number of officers present. See R., Vol. II at 61; Appellant's Br. at 22. Defense counsel did not argue, either at the suppression hearing or on appeal, that the officers' conduct inside the motel room exceeded the scope of Nora's consent to enter the motel room. In denying the Motion to Suppress, the trial court rejected Defendant's argument that Nora's consent was not voluntary. See R., Vol. II at 63. Based on the record before us, we are unable to conclude that the district court's conclusion was clearly erroneous. Although the evidence contained in the record on appeal could support a finding by the trial court that Nora's consent was not voluntary and that the officers acted beyond the scope of Nora's consent, under the clearly erroneous standard we must affirm if there is any rational basis for sustaining the trial court. See United States v. Griffin, 7 F.3d 1512, 1516 (10th Cir. 1993), cert. denied, 515 U.S. 1168 (1995).

Defendant argues that his statements to the officers in the motel room

should have been suppressed because they were the fruit of a non-consensual, and thus unreasonable, entry into the room. Because the initial premise of illegal entry fails, this argument must also fail. In maintaining that Defendant's statements and consent to search the truck were not consensual, Defendant's counsel cited the fact that Defendant was not free to leave when the officers began questioning him. See R., Vol. II at 37, 62. Defense counsel also argued that because Defendant did not receive his Miranda warnings prior to the questioning or prior to his consent to search the truck, Defendant's statements were involuntary. See id. at 62. The trial court expressly rejected these arguments, finding that all of Defendant's acts and statements in the motel room were voluntary. See id. at 64. We hold that the trial court's determination was not clearly erroneous.

Defendant contends that the prosecution withheld evidence which was material to his defense and exculpatory. See Appellant's Br. at 27, 30. Defendant argues that because this evidence was withheld, he was denied due process of the law, and, therefore, that he is entitled to a new trial under the holding in Brady v. Maryland, 373 U.S. 83, 86-90 (1963). The evidence at issue is Defendant's statement to the officers that the truck was taken from the motel parking lot by its owner during the night, prior to the discovery of the marijuana. See Appellant's Br. at 28, 32. Defendant's counsel argues that knowledge of this

statement would have enabled her to bolster the argument that Defendant had no knowledge of the drugs in the truck. See id. at 28. Defendant also argues that he should be granted a new trial because this is "newly discovered evidence" and that a new trial is required to serve the interests of justice. Id. at 27. Additionally, Defendant maintains that the failure to disclose this evidence violated Federal Rule of Civil Procedure 16 and that the appropriate remedy for this violation is a new trial. See id. at 30.

We determine whether Defendant is entitled to a new trial because he has been deprived of due process, pursuant to Brady, under the *de novo* standard. See United States v. DeLuna, 10 F.3d 1529, 1534 (10th Cir. 1993). Under the Brady doctrine, if the prosecution fails to disclose to defense counsel evidence which is material and exculpatory, the defendant has been deprived of due process. See id. at 1534-35. The test for materiality is whether there is a reasonable probability that disclosure of the statement to defense counsel would have resulted in a different verdict. See United States v. Abello-Silva, 948 F.2d 1168, 1180 (10th Cir. 1991) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)), cert. denied, 506 U.S. 835 (1992). The reviewing court should analyze the evidence "with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." Strand v. United States,

780 F.2d 1497, 1504 (10th Cir. 1985) (McKay, J., dissenting). After a thorough review of the trial transcript, we hold that there is not a reasonable probability that had Defendant's counsel been aware of the evidence at issue, the jury would have been compelled to return a different verdict. Cf. Banks v. Reynolds, 54 F. 3d 1508, 1518-22 (10th Cir. 1995) (holding failure of prosecution to disclose that "at least three men had been arrested for the crime that [defendant] was charged with having committed" violated defendant's right to a fair trial); Smith v. Secretary of N.M. Dep't of Corrections, 50 F.3d 801, 829-30 (10th Cir.) (holding failure to reveal a report which contained information about physical evidence, and the identity and motive of a key witness for testifying, violated Brady doctrine), cert. denied sub nom. Mondragon v. Smith, 516 U.S. 905 (1995).

We review the denial of a motion for a new trial based on newly discovered evidence for an abuse of discretion. See United States v. Sutton, 767 F.2d 726, 728 (10th Cir. 1985).

> A motion for a new trial is not regarded with favor and should only be granted with great caution. . . . When a motion for a new trial is based on newly discovered evidence, the defendant is usually required to show that: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997) (internal citations

omitted). Because we have determined that disclosure of the evidence at issue would not have created a reasonable probability of an acquittal, we hold that the trial court did not abuse its discretion when it denied Defendant's motion for a new trial based on newly discovered evidence.

We also apply the abuse of discretion standard to a trial court's decision regarding sanctions for a violation of the rules of discovery. See United States v. Ivy, 83 F.3d 1266, 1280 (10th Cir.), cert. denied, ___ U.S. ___, 117 S. Ct. 253 (1996). We hold that there was no abuse of discretion in the trial court's refusal to grant a new trial to Defendant to sanction the government for the alleged discovery violations.

Defendant also argues in this appeal that the trial court should have held a hearing to determine his competency to stand trial after his counsel expressed concern about his understanding of the proceedings.

> [A] trial court need not conduct a competency hearing when there has been only minimal or no evidence of incompetence. In reviewing whether the trial court should have held a competency hearing, we must determine "whether a reasonable judge, situated as was the trial court judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to competency to stand trial." . . . To raise a substantial question requiring a competency hearing there must be some evidence to create doubt on the issue. Merely raising the issue is insufficient.

United States v. Crews, 781 F.2d 826, 833 (10th Cir. 1986) (internal citations omitted); see also United States v. Williams, 113 F.3d 1155, 1160 (10th Cir.

1997). After a thorough review of the record before us, we conclude that the trial court was not presented with sufficient evidence of incompetence to mandate a hearing on this issue.

We hold that the trial court did not err in finding that Defendant's minor child had the legal capacity to grant third-party consent to enter the motel room. We also conclude that the trial court's determination that the child voluntarily consented to the officers' entry into the motel room was not clearly erroneous. Because Defendant's statements in the motel room and his consent to search the truck were not the products of an unreasonable search, the denial of the Motion to Suppress was correct. We hold that there was no error in the trial court's decision to deny Defendant a new trial based on newly discovered evidence, the alleged violations of Federal Rule of Criminal Procedure 16, or under the doctrine of Brady v. Maryland. Additionally, we hold the trial court's decisions regarding Defendant's competency to stand trial were not in error. Therefore, Defendant's conviction is **AFFIRMED**.