

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-26-2004

# USA v. Clark

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2086

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Clark" (2004). *2004 Decisions.* Paper 776.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/776

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-2086
_____

UNITED STATES OF AMERICA

v.

MICHAH CLARK,

Appellant
_____

Appeal from the United States District Court
For the District of New Jersey
D.C. No.: 02-cr-00415-1
District Judge: Honorable Stephen M. Orlofsky
_____

Submitted Under Third Circuit LAR 34.1(a) April 23, 2004

Before:  SCIRICA, Chief Judge, ROSENN and GREENBERG, Circuit Judges

(Filed: April 26, 2004)
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

Defendant Michah Clark was tried to a jury and convicted of aiding and abetting a

bank robbery.  On appeal, he contended that the District Court erred in denying his pre-

trial motion to suppress evidence seized by the Government in a warrantless search of a

hotel room.[1]  He also contends that the trial court's denial of his request to instruct the jury regarding the difference between the crime of aiding and abetting, for which he was charged and convicted, and the lesser crime of being an accessory after the fact, for which he was not charged, constituted reversible error.  We affirm the judgment of the District Court.

## I.

We write solely for the parties and their counsel who are familiar with the case. We, therefore, need not present a detailed recitation of the facts.

## A.

On the morning of June 11, 2000, an armed robbery of approximately $308,815.32 occurred at the Commerce Bank in Cherry Hill, New Jersey.  Based on an anonymous caller's tip later that day, FBI agents learned that some of the parties allegedly involved in the robbery were occupying Room 213 of the Embassy Suites Hotel in Philadelphia, after staying briefly in two other Philadelphia hotels.  They learned that the room was reserved under Clark's name.

FBI agent Mark Gillen placed a "pretext" call to Room 213 around 2:00 a.m. on June 12.  A male voice answered the phone.  When FBI agents knocked on the door

---

[1] Clark's motion to suppress was directed to evidence obtained from Room 213 of the Embassy Suites Hotel in Philadelphia, as well as another room in a different Philadelphia hotel.  Despite a cursory listing of the two rooms in his statement of the issues, Clark's brief is limited only to the search of Room 213.  Accordingly, we review only the research of that room.

moments later and announced their presence, however, no one answered from that room.[2]

The agents broke into the room, and there they found Quinzel Champagne and Thaddeus

Pitts, whom FBI believed to be suspects in the bank robbery. They also found a woman

named Sharifah Hall unclothed, sleeping in bed with Pitts. They put the two men under

arrest.

In response to the agents' questioning, Hall said that she and the other two men

had entered the room (June 11) using a key. She said that Clark was not with them when

they first entered. She told Agent Gillen that she had been in the room either all the time

or most of the time since entry.[3] Agent Gillen proceeded to ask Hall for consent to search

---

[2] Agent Gillen testified at the hearing regarding Clark's motion to suppress that he and other FBI agents discovered a box of .45 caliber ammunition in a previous hotel that they searched, but the weapon itself was missing. He testified that FBI decided to enter Room 213 to find that weapon even though nobody answered the door.

[3] It is not clear whether Hall had stayed in that room until she was found or whether she had left the room with Pitts, Champagne, and Clark to get something to eat prior to returning with Pitts and Champagne around 9:00 p.m. that night. In response to a question by the prosecutor, Agent Gillen testified at the hearing regarding Clark's motion to suppress as follows:

Q. Did Sharifar Hall indicate to you how long she had been in that room?

A. She had been—they had entered the room after they had checked in, and they had left, gone out, Micah something to eat, and then they came back for good about 9 o'clock that evening and had been in that room until we entered it.

(Clark's Appx. at 66.) Gillen's testimony has not made it clear whether Hall left the room with "them" to get something to eat or whether Hall "had been alone in room 213 for some time in the evening," as asserted by the Government in its brief.

3

the room, and she provided him with written consent. As the result of the search pursuant to Hall's written consent, the FBI agents found $180,000 cash, mostly wrapped in Commerce Bank wrappers, representing the respective shares of Champagne and Pitts in the robbery proceeds. They subsequently gave information that led to the arrest and indictment of Clark.

B.

During their deliberations, the jury requested clarification on various points. The jury submitted the following note to the court: "Judge, at what point does a crime begin and end? Would disposing of evidence be considered aiding and abetting?" After taking a brief recess and conferring with both parties, the District Court decided to reinstruct the jury on the law pertaining to aiding and abetting. The court refused defense counsel's request to charge the jury concerning the difference between aiding and abetting and being an accessory after the fact. The court explained that Clark was not charged with being an accessory, a lesser crime, and that the evidence did not fit the latter crime.

With respect to the jury's specific question about when a crime begins and ends, the court stated that it was "a factual determination which you as members of the jury must make based upon the evidence which has been presented to you in the courtroom." In response to a later note from the jury, the court instructed the jury that "there can only be one verdict in this case because there is only one charge. The charge is aiding and abetting bank robbery." The court finally reinstructed the jury on the elements of aiding

4

and abetting. The jury convicted Clark of the charge of aiding and abetting the bank robbery.

## II.

### A.

"This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002) (citing United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998)).

A warrantless search is constitutionally permissible if a "specifically established and well delineated" exception applies. Mincey v. Arizona, 437 U.S. 385, 390 (1978). "Proper consent voluntarily given" is one of the established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973). It is the Government's burden to establish that an exception to the warrant requirement applies. United States v. Herrold, 962 F.2d 1131, 1137 (3d Cir. 1992).

Clark argues on appeal that the FBI agents could not have reasonably believed that Hall had either actual or apparent authority to consent to the search.[4] Specifically,

---

[4]It is not disputed that in his motion to suppress Clark did not challenge that Hall voluntarily gave her consent to the search. The District Court subsequently denied Clark's motion for reconsideration based, among others, on an alternative argument that Hall's consent was not voluntary but under duress. The court rejected this argument because Clark failed to raise it in his original motion and his newly raised claim was untimely. Clark has not appealed from that decision denying his motion for reconsideration. We, therefore, do not consider whether Hall's consent was voluntary.

Clark argues that the agents were faced with an "ambiguous situation and nevertheless proceeded without making a further inquiry." He explained that the FBI agents were looking for two males and unexpectedly found Hall in the room. He asserted that the FBI agents took advantage of Hall, who was found naked, anxious, nervous, and frightened. He suggests that they should have doubted that she could have the authority to consent because she may have appeared to be as a prostitute to them.

Clark's argument is not convincing. It is based on an assumption that Hall did not have actual or common authority over the use and access of the hotel room. Clark assumes that Hall at most had apparent authority. His assumption is not supported by the facts. It is not disputed that the hotel room was not reserved under the name of any of the three people whom the agents found occupying it; Clark had reserved the room in his name. It is not disputed that Hall first entered the room together with Champagne and Pitts with a key provided by the hotel or Clark. It is not disputed that Hall had occupied the room continuously or most of the time until she was found. There is evidence that Hall was a friend to some of the robbery suspects and accompanied them during their partying and stays in the various hotels between June 10 and 12. Clark has not asserted, and there is no evidence, that Hall did not have common authority over the use and access of the hotel room. Moreover, having recovered a verdict in its favor, the Government is entitled to the benefit of all inferences.

If Hall had common authority over the premises, and there is no evidence to show

6

otherwise, her consent to search was valid. See Illinois v. Rodriquez, 497 U.S. 177, 188-189 (1990).

"[A] warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of 'reasonable searches and seizures' if the officers have obtained the consent of a third party who possesses common authority over the premises." Rodriguez, 497 U.S. at 179 (citing United States v. Matlock, 415 U.S. 164 (1974)). Consent may be given by anyone who has authority over the premises, even if that authority is shared with others. Matlock, 415 U.S. at 171. "The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." Id. at 171 n.7.

Assuming *arguendo* that Hall did not have actual common authority over the hotel room, there is still sufficient evidence for us to conclude that the FBI agents could have reasonably believed that she had authority to consent to the search. See Rodriguez, 497 U.S. at 186-89. By all appearance, Hall was a guest in the hotel room together with the two men. She told Agent Gillen that she had come there with them, using a key to open the door. She said that she had stayed there all or most of the time since entry. She was found to be staying overnight, quite at home in bed with Pitts. There was no appearance

7

that she was an intruder. By appearances, she was one of the three authorized guests in the hotel room. It was reasonable for the FBI agents to believe under the circumstances that she was a guest with common authority over the use and access of the hotel room.

The Supreme Court also has held that a warrantless entry is valid when based on the consent of a third party whom the police, at the time of the entry, <u>reasonably believed</u> possessed common authority over the premises. <u>Rodriguez</u>, 497 U.S. at 186-89. Determination of the reasonableness of the law enforcement officer's belief is "judged against an objective standard" and rests on the answer to the question: "would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? . . . [I]f so, the search is valid." <u>Id.</u> at 188-89 (citation omitted) (internal quotation marks omitted). "The consent of a third party to a search of common premises is effectual if the third party has either the actual authority or the apparent authority to consent to a search." <u>United States v. Gutierrez-Hermosillo</u>,142 F.3d 1225, 1230 (10th Cir. 1998) (citing <u>Rodriguez</u>, 497 U.S. at 188).

Significantly, the woman in <u>Rodriguez</u> brought the police to a different apartment located in another street from the one she met them to search for a man who occupied the apartment. She impressed the police that she had common authority over that apartment by her possession of a key to that apartment and referred to it several times as "our" apartment. It did not occur to the police to ask her whether at that moment she was a

resident in that apartment, or whether she had any right to enter that apartment. It turned out that she had vacated that apartment several weeks before and had no longer any authority over the premises. Even under those circumstances, the Supreme Court held that it was reasonable for the police to believe that she had (apparent) common authority over the premises and, therefore, that the police's warrantless entry was lawful. 497 U.S. at 179-80.

Unlike the woman in Rodriguez, Hall was found inside the hotel room, having stayed occupied it overnight with the two men. Her occupancy in that hotel room makes this case much stronger than Rodriguez.

We find no reversible error in the District Court's denial of Clark's motion to suppress the evidence the Government obtained in Room 213 of the Embassy Suites Hotel.

B.

This Court exercises plenary review in determining "whether the jury instructions stated the proper legal standard." United States v. Coyle, 63 F.3d 1239, 1246 (3d Cir. 1995). As to the refusal to give a particular jury instruction or as to the wording of the instruction, this Court reviews only for an abuse of discretion. Id.

Clark does not question the correctness of the court's jury instruction on the law pertaining to aiding and abetting. Instead, he asserts that the question raised by the jury shows that the jury had doubts regarding whether he could be properly convicted of the

crime of aiding and abetting and that the evidence fit only the lesser crime of being an accessory after the fact. He asserts further that that the court erred in failing to follow the jury's question and instruct the jury regarding the law pertaining to being an accessory after the fact.

There is no merit to Clark's argument. If he truly believed that the evidence did not fit the charge of aiding and abetting, the only charge under which he was indicted, he should have filed a motion for a directed verdict, a motion for a mistrial, or a motion to set aside the verdict. He did none of these. He did not even request the court to add an alternative charge of being an accessory after the fact and submit that alternative charge to the jury for consideration. Where the jury was required to consider only the charge of aiding and abetting, it would be confusing, not to say erroneous, for the court to instruct the jury on the law pertaining to another crime for which Clark was not charged.

The court did not abuse its discretion in rejecting defense counsel's suggestion to instruct the jury regarding the difference between the two crimes. The record shows that the court further clarified its jury instructions on the law pertaining to the crime of aiding and abetting.

### III.

For the reasons set forth above, the District Court's judgment will be affirmed.