**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 17, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRUCE SEARS,

Defendant-Appellant.

No. 05-3128

(D. of Kan.)

(D.C. No. 04-CR-10174-MLB)

**ORDER AND JUDGMENT**[*]

Before **HARTZ, EBEL,** and **TYMKOVICH**, Circuit Judges.[**]

Defendant-Appellant Bruce Sears challenges a district court order denying

his motion to suppress evidence.  Sears claims that police violated the Fourth

Amendment when they (1) searched his vehicle without valid consent, and

(2) searched his home pursuant to a warrant that lacked probable cause and was

unconstitutionally vague.  The district court upheld the search of the vehicle and

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders; nevertheless, an order may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal.  *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G).  The cause is therefore ordered submitted without oral argument.

found probable cause to search the residence. The court did not address the specificity argument because Sears raises it for the first time on appeal. We AFFIRM.

## I. Background

On July 4, 2004, two males robbed a Red Lobster restaurant in Wichita, Kansas. They threatened the restaurant's employees while brandishing a silver handgun and left after stealing money as well as an employee's cellular telephone. Witnesses later provided police with a physical description of the perpetrators and identified the getaway car as a white Mazda minivan with temporary license tags. Less than two weeks later, Wichita police identified a minivan with a matching description. Although the minivan had permanent license tags, the license number was registered to a different vehicle. Officers stopped the minivan and subsequently arrested its driver, Bruce Sears, for driving on a suspended license. Sears consented to a search of his vehicle, but for reasons not indicated in the record, officers did not seize any evidence at that time.

The police sought to search the minivan a second time later that day. Although they were unable to locate the minivan's registration in a Vehicle Identification Number (VIN) database, police traced the permanent license tags on the car to another automobile owned by Natashia Gafford. Neither the other vehicle nor its license tag had been reported stolen. After contacting Gafford,

police learned that she and Sears had been in a long-term relationship but were presently separated. In addition, they had two children together, and Gafford was pregnant with their third. Police also learned that following Sears's arrest earlier that day, Gafford had driven the minivan to Sears's grandfather's house for safekeeping. After police asked whether she had an ownership interest in the minivan, Gafford responded that she had previously given Sears half of the money he needed to buy the vehicle. Gafford subsequently signed a "waiver to search" form, authorizing police to search the minivan a second time. This form read, in relevant part:

> I, Natasha Gafford, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize . . . Officers of the Wichita Police Department, Wichita, Kansas to conduct a complete search of my . . . vehicle.

Aplee. App. at 36.[1] The consent form specifically identified the Mazda minivan by its VIN. During this second search, police recovered a temporary license tag.

By this point in the investigation, police had identified Sears as matching a general description of the armed perpetrator from the Red Lobster robbery. Police already knew the minivan matched the description of the robbery getaway vehicle, and, from the search, the minivan contained a temporary license tag

---

[1] The form listed Gafford's first name as "Natasha," however, it is signed by "Natashia Gafford." We can only assume that the officers who prepared the form for Gafford inadvertently misspelled her name.

consistent with eyewitness observation at Red Lobster.[3]  In a subsequent photo

lineup, one of the restaurant eyewitnesses positively identified Sears as the

individual who had robbed the Red Lobster at gunpoint.  Police incorporated all

of this information into an affidavit establishing probable cause in support of a

warrant to search Sears's residence.

A magistrate judge issued a warrant authorizing police to search Sears's

residence for the following:

1.  Any and all ammunition located inside the residence.
2.  Firearms and indicia of ownership.
3.  Clothing, including but not limited to masks, gloves, hats, hooded sweatshirts, sweaters, pantyhose, and shoes.
4.  Indicia of occupancy, residency, and/or ownership of the [residence].
5.  United States currency.
6.  Security safes and/or lock boxes.
7.  Sacks.
8.  Cellular phones.
9.  Photographs and diagrams of the residence.
10.  Forensic evidence including but not limited to fingerprints, hair, fiber and other trace evidence.

Aplee. App. at 144.  Police executed the search warrant and seized evidence

connecting Sears to the robbery.

Prior to trial, Sears moved to suppress the evidence gathered from his

minivan and residence.  Sears claimed that the search of his minivan was illegal

under the Fourth Amendment because Gafford had no ownership interest in the

---

[3] Witnesses at the robbery were not able to identify the number on the temporary tag of the getaway car.  Although the temporary tag in Sears's car looked similar to the one used on the getaway car, police were unable to confirm that they were the same.

vehicle and that it was unreasonable for police to conclude that she had apparent authority to consent to the search. He also claimed the evidence from his residence should be suppressed because the issuing magistrate judge lacked a substantial basis for finding probable cause to search the residence. The district court denied the motion on both grounds.

A jury convicted Sears on three counts relating to the Red Lobster robbery, and he was sentenced to life imprisonment.

## II. Analysis

On appeal, Sears contends that the district court erred in denying his motion to suppress evidence. He argues first that under the totality of circumstances, the police officers' conclusion that Gafford had authority to consent to a search of the minivan was "totally unreasonable," so the search yielding the temporary license tag violated the Fourth Amendment. Aplt. Br. at 10. Sears further maintains that police violated the Fourth Amendment when they searched his residence because the search warrant lacked probable cause and failed to describe with sufficient particularity the things to be seized. We consider each claim in turn.

### A. Standard of Review

When reviewing a district court's denial of a motion to suppress, we accept the facts underlying its determination unless clearly erroneous, and view the evidence in a light most favorable to the government. *United States v. Kimoana*,

383 F.3d 1215, 1220 (10th Cir. 2004). The credibility of the witnesses, the weight to be given to the evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court. *Id*. The ultimate determination of reasonableness under the Fourth Amendment, however, is a question of law that we review de novo considering the totality of the circumstances. *See id*.

**B. Search of the Minivan**

The first claim is that Gafford lacked authority to consent to the search of the minivan, rendering the search unconstitutional. We reject this claim because the facts known to police when she signed the waiver supported a reasonable belief that she had authority to consent.

A third party's consent to search property is valid if police reasonably believe that she has "apparent authority" to consent to the search. *United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1230 (10th Cir. 1998) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). The "apparent authority" test for determining the reasonableness of an officer's belief is objective, asking whether the facts available to police at the time would "warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises[.]" *Id*. (quoting *Rodriguez*, 497 U.S. at 188).

Sears argues that the facts at the time of the search do not meet this standard. He first argues that Gafford's obvious economic status did not permit a

reasonable conclusion that she could have her own vehicle and ownership interest in the minivan. Furthermore, while Gafford may have driven the minivan following Sears's arrest, the fact that she parked it at his grandfather's house, and not her own, indicated that the vehicle was not hers.[4]

The authority justifying third-party consent does not rest upon property law "but rests rather on *mutual use* of the property by persons generally having joint access or control for most purposes." *Kimoana*, 383 F.3d at 1222 (quoting *United States v. Matlock*, 415 U.S.164, 171 n.7 (1974)) (emphasis added). It was therefore unnecessary for police to believe Gafford owned the minivan. Instead, police needed only a reasonable belief that she had general access to or control over the minivan for her consent to be valid. Sears's evidence that Gafford did not actually own the vehicle is therefore not dispositive on the issue of third party consent. We reiterate as well that the "apparent authority" analysis turns on officers' reasonable belief about a third party's authority to consent; officers are not required to be absolutely certain.

Sears also relies on Gafford's testimony at the suppression hearing about a conversation she had with police prior to signing the "waiver to search" form. The district court concluded that when Gafford's testimony about the

---

[4] Sears asserts that Gafford was not in possession of the minivan's keys, and criticizes the failure of police to ask whether she even possessed the keys. Yet Gafford drove the minivan to Sears's grandfather's house "for safekeeping" after Sears's arrest. Sears does not explain how Gafford was able to drive the minivan without having the keys.

conversation conflicted with that of police, the court "credit[ed] [the police] version." Aplee. Supp. App. at 133. Witness credibility falls within the province of the district court. *Kimoana,* 383 F.3d at 1220. We must therefore defer to the district court's conclusion that Gafford's relationship to Sears and her "demeanor on the witness stand and her effort to mince words as to what was said leads the court to conclude that [the police] account of Gafford's statements is more accurate." Aplee. Supp. App. at 133. Sears cites no reason to conclude that this view of Gafford's testimony was clearly erroneous, so we accept as fact the district court finding that Gafford told police she had an ownership interest in the minivan and had given Sears half the money to purchase it. [Aplee. Supp. App. at 123.]

In addition to Gafford's statements to police, other facts indicate Gafford had authority and control over the minivan. Sears and Gafford had been in a long-term relationship, had two children together, and were expecting a third. The license plate displayed on the minivan was actually registered to a vehicle owned by Gafford, and neither the other vehicle nor the license plate had been reported stolen. Gafford had also driven the minivan to Sears's grandfather's house following Sears's arrest. Finally, Gafford signed a consent form that specifically identified the minivan as "my vehicle."[5] In light of these facts, the

_____

[5] Gafford's suppression hearing testimony that she did not actually read the waiver before signing it has no bearing on the fact that signing the waiver gave

(continued...)

police reasonably believed Gafford had authority to consent to the search. Thus, the district court properly denied the motion to suppress.

## C. Search of Sears's Residence

Sears next challenges the search of his home on two grounds. First, he claims the facts did not support a finding of probable cause. Second, he argues that the search warrant failed to "particularly describ[e]" the things to be seized as required by the Fourth Amendment. Sears did not previously raise this second issue below.

### 1. Probable Cause

On the first point, we agree with the district court that the warrant was supported by probable cause. Probable cause exists when facts presented in a supporting affidavit "would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *United States v. Nolan*, 199 F.3d 1180, 1183 (10th Cir. 1999) (quotation marks omitted). Probable cause is predicated on "a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990).

We find such a nexus here. The affidavit included the fact that Sears matched the physical description eyewitnesses gave at the Red Lobster and that

---

[5](...continued)
the impression that she had authority to consent to the search.

his Mazda minivan also matched eyewitness descriptions of the getaway vehicle. The affidavit noted that Sears was driving the minivan with permanent license tags belonging to another vehicle, but inside the vehicle was a temporary license tag—similar to the temporary tag eyewitnesses observed on the getaway vehicle. Finally, the affidavit reflected that an eyewitness had positively identified Sears in a police photo lineup as the armed robber at the restaurant. Because the search of the minivan did not recover the stolen money, the gun used in the commission of the robbery, or other items relating to the robbery, it was logical that such evidence could be found at Sears's residence.

We agree with the district court that the affidavit created a substantial and reasonable basis for concluding that probable cause existed to search Sears's residence.

### 2. Particularity

The second issue relating to the search of the residence is new to this appeal. Sears asserts that the warrant used to search his residence lacked particularity, so the search of his residence was essentially "a fishing expedition." Aplt. Br. at 17. Because Sears failed to raise this issue before the district court, our review is limited to plain error. *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1329 (10th Cir. 2003). Under this standard, reversal is warranted only where there is "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial

proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quotation omitted). We need not pursue this analysis to its end because we find no error here.

As noted above, the warrant to search Sears's residence specifically listed the various items to be seized. Sears rests his particularity argument on the assertion that the items to be seized in the search warrant were so general that they "are arguably present in almost every American home," and that the search warrant's scope went beyond what the affidavit contained. Aplt. Br. at 16. For example, Sears notes that the search warrant listed ammunition even though the affidavit for the search warrant did not indicate the firearm used in the robbery was even loaded. Also, the search warrant did not identify the "firearm" sought with any greater specificity, despite witnesses who identified the armed robber as wielding a silver handgun. The search warrant also failed to identify the particular brand of stolen cellular telephone police sought, despite the fact that the affidavit described it as a Nokia telephone. Thus, Sears argues, the search warrant was not only vague, but it also erroneously left out evidence that had been included in the affidavit.

Sears cites the Supreme Court's decision in *Groh v. Ramirez*, 540 U.S. 551 (2004), as support for his contention that lack of particularity of a warrant renders that search unreasonable under the Fourth Amendment. Indeed, the Court in *Groh* found that even if an affidavit for a warrant adequately describes the things to be

seized, if the warrant itself does not, it is invalid. *Id.* Thus, Sears argues, even if the affidavit accompanying the application for a search warrant specified exactly the items used in the commission of the robbery—a silver handgun and a Nokia mobile phone—the fact that the search warrant did not include them renders it facially invalid.

The Fourth Amendment's particularity requirement ensures that search warrants are specific enough so as to prevent an officer from conducting a "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). A search warrant's description is sufficiently particular when it "enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (quotations removed). "The common theme of all descriptions of the particularity standard is that the warrant must allow the executing officer to distinguish between items that may and may not be seized." *Id.* at 600 n.12.

The *Groh* decision cited by Sears dealt with a search warrant whose generality cannot reasonably be compared to the search warrant in this case. The search warrant in *Groh* was unconstitutional because the portion of the warrant calling for a description of the property to be searched described only a "two-story blue house." *Id.* at 554. Such a broad description would permit precisely the kind of "exploratory rummaging" prohibited by the Fourth Amendment. Here,

the specificity of the list in the warrant to search Sears's residence would allow police to reasonably ascertain and identify the items to be seized while preventing them from conducting a generalized rummaging through Sears's belongings.

Because there was no error below, we need not pursue the remaining steps of plain error analysis.

### III.  Conclusion

For these reasons, we AFFIRM the district court's denial of Sears's motion to suppress evidence.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge