**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 16, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ERIC CRABB,

      Defendant-Appellant.

No. 06-2219

(D.C. No. CR-05-2410-BB)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **TACHA, BRISCOE,** and **GORSUCH**, Circuit Judges.

Defendant Eric Lee Crabb entered a conditional plea of guilty to one count of

possession with intent to distribute fifty grams and more of a mixture or substance

containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §

841(b)(1)(B), and was sentenced to a term of imprisonment of sixty months. Crabb now

appeals, claiming the district court erred in denying his motion to suppress evidence

obtained from a warrantless entry into and search of his residence. We exercise

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

On September 28, 2005, six agents from the Pecos Valley (New Mexico) Drug Task Force drove in two cars to a house located at 504 Del Rio in Carlsbad, New Mexico, in order to question the resident, Eric Crabb, regarding complaints they had received regarding suspected drug activity at the house. Four of the agents remained in the front and side of the house, while the two remaining agents, including Eric McGee, an officer with the Eddy County (New Mexico) Sheriff's Department, approached the back door of the residence and knocked.[1] The back door opened and a woman named Rachelle Hays answered. McGee was not surprised to see Hays. More specifically, McGee was familiar with both Crabb and Hays, having responded as a patrolman to a domestic violence call involving Crabb and Hays at an apartment they previously shared on Canal Street in Carlsbad. McGee and the other agent asked Hays if they could visit with Crabb. Hays stated that Crabb wasn't there. McGee, concerned that Hays might not be telling the truth, explained: "Look, we just want to talk to him [Crabb]. We're not here to arrest him or anything." ROA, Vol. III at 10. Hays responded by saying that McGee and the other agents "could come in and look for [Crabb], that he wasn't there." Id. at 10-11. According to McGee, neither he nor the other agent at the back door asked Hays for permission to enter the house.

Several agents entered the one-bedroom house and conducted a brief search for

---

[1] According to McGee, he had assisted other officers on calls to Crabb's residence before and knew that Crabb primarily used the back door.

Crabb. During the course of the search, the agents observed drug contraband, including a pipe and a bong. The agents also observed on the mirror of the bedroom the names of several people with numerical figures next to the names. The agents believed this to be a drug ledger.

After concluding the search for Crabb, the agents spoke briefly to Hays inside the house, explained the reason for their visit, and again told her that they needed to speak to Crabb. Hays, in response, told the agents where Crabb was and that she expected him back at any time. She also stated that "she was on and off staying there [at the house] with [Crabb]," and that she had agreed to "wait there [at the house] until he got back." Id. at 15. Hays proceeded to allow the agents to remain in the residence until Crabb returned.

Crabb eventually returned to the residence and was met in the driveway by the agents. Id. The agents detected a strong odor of marijuana in the vehicle that Crabb was driving and advised him of his Miranda rights. Crabb admitted possessing the drug paraphernalia found in his home, as well as a small amount of methamphetamine. Crabb was arrested and searched. During the search, agents discovered that Crabb had in his possession over ninety grams of methamphetamine. A search of Crabb's vehicle and residence produced additional paraphernalia and small quantities of drugs.

On November 2, 2005, a federal grand jury indicted Crabb on one count of possession with intent to distribute fifty grams and more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 2. Crabb moved to suppress all evidence obtained as a result of

the warrantless entry into his residence on September 28, 2005, arguing that Hays lacked

actual or apparent authority to consent to the agents' entry into and search of the

residence. The district court, after conducting an evidentiary hearing, denied Crabb's

motion, concluding that Hays had apparent authority to consent to the agents' entry into

and search of the residence.

On February 14, 2006, Crabb, acting pursuant to a written plea agreement with the

government, entered a conditional plea of guilty to the count alleged in the indictment.

Under the terms of the plea agreement, Crabb reserved his right to appeal the district

court's denial of his motion to suppress. The district court subsequently sentenced Crabb

to a term of imprisonment of sixty months. Crabb has since filed a timely notice of

appeal.

## II.

Crabb contends on appeal that the district court erred in denying his motion to

suppress. "When reviewing the denial of a motion to suppress, we accept the district

court's factual findings unless clearly erroneous, and we review the evidence in the light

most favorable to the government." United States v. Patterson, 472 F.3d 767, 775 (10th

Cir. 2006) (internal quotation marks omitted). "[W]e review de novo the ultimate

determination of reasonableness under the Fourth Amendment because that is a legal

conclusion." Id. (internal quotation marks omitted). "The defendant bears the burden of

establishing a Fourth Amendment violation." Id.

"The Fourth Amendment generally prohibits the warrantless entry of a person's

home, whether to make an arrest or to search for specific objects." Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). "The prohibition does not apply, however, to situations in which voluntary consent has been obtained, either from the individual whose property is searched, or from a third party who possesses common authority over the premises." Id. "The consent of a third party to a search of common premises is effectual if the third party has either the actual authority or the apparent authority to consent to a search." United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1230 (10th Cir. 1998) (citing Rodriguez, 497 U.S. at 188).

"The Supreme Court's holding in Rodriguez delineates the proper analysis for determining whether third-party consent searches are valid under the 'apparent authority' exception." Gutierrez-Hermosillo, 142 F.3d at 1230. "Rodriguez held that the Fourth Amendment is not violated when officers enter without a warrant when they reasonably, although erroneously, believe that the person who consents to their entry has the authority to consent to this entry." Id. "The determination of the reasonableness of the officers' belief is an objective one: '[W]ould the facts available to the officer at the moment . . . warrant a man of reasonable caution [to believe] that the consenting party had authority over the premises?'" Id. (quoting Rodriguez, 497 U.S. at 188) (internal quotation marks omitted).

Applying that standard to the facts presented here, we agree with the district court that McGee and the other agents reasonably believed that Hays had authority to consent to their entry. At the time McGee approached and knocked on the back door of the

-5-

house, he was already familiar with Crabb and Hays, having previously responded to a domestic violence call involving Crabb and Hays when they lived together at a different residence. In other words, McGee had knowledge that Crabb and Hays were romantically involved and had, at least in the past, lived together. Based upon that information, we conclude it was reasonable for McGee to have believed, at the time Hays answered the knock on the backdoor of the house, that Hays and Crabb were still romantically involved and lived together at the house. Importantly, nothing said by Hays was sufficient to dispel McGee of that reasonable belief. When McGee asked Hays if he could speak with Crabb, Hays simply responded that Crabb wasn't there. When McGee then explained that they didn't want to arrest Crabb, Hays, without prompting, invited McGee and the other agents inside the house to look for Crabb. By doing so, Hays clearly implied that she possessed the authority to consent to their entry into and search of the house. Although Crabb correctly notes that "Hays had been arrested the month before, and the booking records showed that she had a different address," Aplt. Br. at 9, the fact remains that there was no evidence presented indicating that McGee or the other agents were aware of that information at the time they approached the house and spoke with Hays. Indeed, McGee specifically denied such knowledge. In sum, we conclude that a reasonable officer in the position of Officer McGee would have believed that Hays shared joint access to the home with Crabb, and thus possessed the authority to consent to the agents' entry into and search of the house.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge