TYMKOVICH, Circuit Judge.
Victor Sanchez appeals the district court’s denial of his motion to suppress the *687 admission of 100 kilograms of marijuana discovered by probation officers during a home visit. The home visit followed a tip that Sanchez was living beyond his means and had recently purchased a new home and car shortly after his release from prison. The district court held that Sanchez’s 15-year-old daughter who was home babysitting at the time, validly consented to the inspection of the home.
We agree with the district court that Sanchez’s daughter had actual authority to consent to the home visit and the officers properly relied on her consent. Although the district court found that the officers’ discovery of over $100,000 cash in a bedroom was the fruit of an illegal search, it found no infirmity to the discovery of the marijuana. Since no limitations were placed on the scope of the inspection and the officers had information that led them to believe Sanchez had purchased the home and a new car without adequate financial resources, the court properly concluded the officers would have discovered the marijuana in the home’s garage.
Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.
I. Background
In 2005, Sanchez was convicted for possession of cocaine and a related drug conspiracy. He was sentenced to two consecutive terms of 18 months’ imprisonment, suspended to three years of probation. Among other conditions, Sanchez’s probation order stipulated that “I [Sanchez] will permit any Probation/Parole Officer to visit me at my home or place of employment at any time.” ROA, Vol. 1 at 35. Sanchez was also required “to advise all members of [his] household that Probation & Parole Officers will occasionally visit the residence and ask them to show courtesy and respect toward the Officers.” ROA, Vol. 1 at 37.
Sanchez subsequently was imprisoned for a parole violation. After his release from prison in 2006, Sanchez moved into a home in Albuquerque with his wife and children. In December 2006, Sanchez’s probation officer received a tip that Sanchez was living beyond his means. Although Sanchez was earning between $6.50 and $10 per hour at his job, the officer was told that Sanchez recently had bought a new house and car. Two probation officers were dispatched to Sanchez’s residence to conduct a home visit.
A.L., Sanchez’s 15-year-old daughter, greeted the officers when they arrived at the front door. The daughter stated that her father was not home. The officers, in plain clothes but displaying badges, explained that they wanted to conduct a home visit and asked whether she would “show them around the house.” ROA, Vol. 3 at 118. She agreed.
The officers’ and AL.’s testimonies conflict as to what happened next. The officers testified that A.L. led them through the living room, kitchen, and eventually upstairs to the bedrooms, while A.L. claims the officers asked her to show them her father’s bedroom immediately. The district court credited the officers’ testimony in part because the officers had no information before the search that would have piqued their interest in Sanchez’s bedroom.
Once in the bedroom, one of the officers spotted gang paraphernalia in an open closet. The officer believed the clothing evidenced a violation of Sanchez’s probation order, which prohibited him from associating with “any person identified by my Probation/Parole Officer as being detrimental to my Probation supervision.... ” ROA, Vol. 1 at 35. Based on this suspicion, the officer looked in a clothes hamper in the closet and discovered $111,000 in *688 cash. At that point the officers called for police backup, fearing that the cash was evidence of drug trafficking.
After backup arrived, one of the officers completed the inspection of the home, unaccompanied by Sanchez’s daughter. When the officer opened the door to the garage, he smelled marijuana. As the officer walked into the garage, he saw an open bag containing a brick of marijuana on the floor, and in the corner he found an open moving box filled with small packages of marijuana. In total, the officers found more than 100 kilograms of marijuana in the garage.
Sanchez was charged with possession with the intent to distribute more than 100 kilograms of marijuana. Sanchez moved to suppress the admission of the marijuana, arguing it was the product of an illegal search. The district court denied Sanchez’s motion, holding that A.L. voluntarily consented to the home visit, and she had actual and apparent authority to do so. While the court concluded the officers did not have reasonable cause to search the clothes hamper, it found that the officers would have discovered the marijuana in the garage as part of the home visit, and that discovery would have given them reasonable cause to conduct a warrantless search of the rest of the house under the terms of the probation order.
After his motion to suppress failed, Sanchez pleaded guilty but reserved his right to appeal the district court’s suppression ruling. This appeal followed.
II. Discussion
“When reviewing a district court’s grant or denial of a motion to suppress, we accept the court’s findings of fact unless clearly erroneous and consider the evidence in the light most favorable to the government.” United States v. Pena, 143 F.3d 1363, 1365 (10th Cir.1998). We review the district court’s legal conclusions de novo. See United States v. Pettigrew, 468 F.3d 626, 633 (10th Cir.2006).
The district court concluded that A.L.’s consent to the officers’ home visit was valid, and her consent would have included the garage.

A. Consent to the Home Visit

Although “probationers and parolees do not enjoy the full suite of rights provided by the Fourth Amendment,” we recognize “law enforcement officers are not completely untethered from the Fourth Amendment when dealing with probationers.” United States v. Trujillo, 404 F.3d 1238, 1242 (10th Cir.2005). The law allows “reasonable conditions” of probation “that deprive the offender of some freedoms enjoyed by law-abiding citizens,” including conditions requiring the probationer to submit to warrantless searches. See United States v. Knights, 534 U.S. 112, 114, 120-21, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) (“When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer’s significantly diminished privacy interests is reasonable.”).
The purpose of a home visit is to determine if the probationer is abiding by his probation order. Testimony from the suppression hearing suggests that home visits generally are limited to plain view inspections, although occasionally they can include more intrusive conduct. Sanchez’s probation order required him to permit a home visit “at any time,” and it required him to permit a warrantless search if officers had “reasonable cause” to believe he committed a probation violation.
When the probation officers arrived at Sanchez’s home, they intended to conduct *689 a home visit to confirm the basic elements of the tip. The government concedes it did not have at that time reasonable cause of a probation violation that would have justified a warrantless search. Therefore, any entry to and inspection of the home must be satisfied by A.L.’s consent.
Valid consent requires two elements. First, in the case of third-party consent, the third-party “must have [had] actual or apparent authority to do so.” United States v. Thompson, 524 F.3d 1126, 1132 (10th Cir.2008). Second, the consent must be “freely and voluntarily given. Whether a [party] freely and voluntarily gave his consent to a search is a question of fact and is determined from the totality of the circumstances.” Pena, 143 F.3d at 1366 (internal citations and punctuation omitted). The district court found both elements were met here.
Actual Authority. Sanchez first contends A.L. lacked either actual or apparent authority to consent to the home visit. “[A] third party has [actual] authority to consent to a search of property if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it.” United States v. Rith, 164 F.3d 1323, 1329 (10th Cir.1999). “Mutual use of property by virtue of joint access is a fact-intensive inquiry,” but we recognize a third party’s entering “the premises or room at will, without the consent of the subject of the search,” demonstrates joint access. Id. at 1329-30. We have declined, however, to find mutual use by an “occasional visitor” to an apartment, see United States v. Cos, 498 F.3d 1115, 1126 (10th Cir.2007), in contrast to cases such as Rith, where the third party was a full-time resident of the premises.
The district court concluded that A.L. had joint access, and we agree that ample evidence supports this view. First, A.L. lived full time in the house and had unrestricted access to it, particularly to the common living areas such as the downstairs and garage. A.L. testified that she (1) as a general matter “had access to the entire house,” ROA, Vol. 3 at 135-36; (2) was “in charge” of the premises when the officers visited, id. at 132; and (3) had “no restrictions on [her] behavior in the home at all.” Id.
Second, at the time the officers arrived at the house, A.L. was home babysitting her younger brother, a task she regularly performed alone. Based on her testimony, the district court concluded A.L. had authority to access the entire house — including the garage — at the time of the home visit. And nothing in the record suggests any restrictions or limitations whatsoever on her access to or use of any part of the home. Sanchez argues A.L. was not allowed “to let strangers in the house,” but the district court did not credit this testimony.
In short, the district court did not clearly err in finding actual authority for the search.[1]
Voluntariness. Next, Sanchez contends A.L.’s consent was not voluntary. We disagree.
*690 We determine voluntariness under the totality of the circumstances. The Tenth Circuit has developed a two-part test to guide our inquiry. The government must (1) “proffer clear and positive testimony that consent was unequivocal and specific and freely and intelligently given,” and (2) the officers must have used no “implied or express duress or coercion.” United States v. Taverna, 348 F.3d 873, 878 (10th Cir.2003) (citation and internal punctuation omitted).
The record supports the district court’s finding of voluntariness. As to consent, the district court found that the probation officers asked A.L. to “show [them] around the residence,” and she agreed without reservation. A.L. freely showed the officers the first floor living quarters and then the second floors, even letting them enter her bedroom and her parents’ bedroom. See ROA, Vol. 3 at 24; see also id. at 30-31, 33, 76, 118-19, 138, 152-53. In addition, no evidence suggests coercion. She knew who the probation officers were when they asked for consent, and nothing indicates the officers used implied threats or intimidation. The officers were in plain clothes with badges, the visit was during the middle of the day, and no show of force or display of weapon was employed.
A.L.’s age is not a bar to consent. Our case law applies no per se rule against a minor’s consenting to entry onto private property — age is but one factor within the totality of the circumstances we consider when determining whether the consent was voluntary. See United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1231 (10th Cir.1998). For example, in Gutierrez-Hermosillo, we upheld a 14-year-old minor’s consent for police to enter a motel room she shared with her father. Other courts have reached the same conclusion and found valid consent from even younger minors. See, e.g., Lenz v. Winbum, 51 F.3d 1540 (11th Cir.1995) (age 9); United States v. Clutter, 914 F.2d 775 (6th Cir.1990) (ages 12 and 14); State v. Lotton, 527 N.W.2d 840 (Minn.App.1995) (age 10).
Here, the district court found A.L. was a relatively sophisticated teenager. She routinely was in charge of the family’s house and her younger brother. The officers testified that she appeared calm and mature, and one officer said she appeared to be 16 or 17 years old. When the officers asked if they could enter the house, she agreed without reservation and conducted a tour that included several bedrooms. Based on A.L.’s testimony and demeanor at the hearing, the district court found that the consent was freely given.
In sum, given the circumstances here, we cannot conclude the district court clearly erred in finding A.L. had the actual authority to approve the search, and her consent was voluntary.

B. Causation and Inevitable Discovery

After obtaining consent, the officers toured the house, looking in both A.L.’s and Sanchez’s bedrooms. One officer noticed in plain view what he believed to be gang apparel. The officer concluded the clothing was evidence of a probation violation — associating with gang members— and proceeded to look in a clothes hamper where he found $111,000.
At the suppression hearing, the district court concluded the gang attire did not in and of itself create a reasonable belief Sanchez violated the terms of his probation order. It found the probation order did not specifically prohibit Sanchez from associating with gang members, and therefore the clothing was not capable of creating a reasonable suspicion of a probation violation. Accordingly, the clothing did not provide reasonable cause for a war *691 rantless search of the clothes hamper. Nonetheless, the court went on to conclude the hamper search did not taint the marijuana’s discovery because the officers inevitably would have visited the garage during the home visit, even if they had not discovered the cash.
Sanchez disagrees, and contends that once the district court concluded the hamper search was illegal, any subsequent discovery by the officers was “fruit of the poisonous tree” and tainted by the illegal search.
To succeed in suppressing the marijuana, Sanchez must show the discovery “would not have come to light but for the government’s unconstitutional conduct.” United States v. Navo-Ramirez, 210 F.3d 1128, 1131 (10th Cir.2000) (em phasis added). If Sanchez shows “but for” causation, the government must then prove the “evidence sought to be suppressed is not ‘fruit of the poisonous tree’ either by demonstrating the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.” Id.; see also United States v. Torres-Castro, 470 F.3d 992, 999 (“ ‘But for’ causality is a necessary, but not a sufficient, requirement for suppression.”). “The inevitable discovery doctrine provides an exception to the exclusionary rule and permits evidence to be admitted if an independent, lawful police investigation inevitably would have discovered it.” United States v. Cunningham, 413 F.3d 1199, 1203 (10th Cir.2005) (internal citation and punctuation omitted).
Sanchez fails to demonstrate “but for” causation. We agree with the district court that no factual nexus connects the constitutional violation — the search of the clothes hamper — and the inspection of the garage. Ample record evidence supports this conclusion. The officers had been tipped off to alleged purchases of a new house and a new car, which suggested Sanchez was living beyond his means and may have resumed criminal activity. Although the home visit began in the common living areas of the home, the district court found that A.L.’s consent was not limited to public areas but included more private areas such as the bedrooms. Given this breadth of consent, the court concluded the consent would have included the garage.
This conclusion flows naturally from the court’s previous findings. A.L. methodically led the officers from room to room, which reasonably manifested consent to enter each room. See United States v. Espinosa, 782 F.2d 888, 892 (10th Cir.1986) (“Failure to object to the continuation of the search ... may be considered an indication that the search was within the scope of the consent.”). She even let the officers look in her bedroom, where they could see empty bottles of alcohol and a poster of a marijuana plant. A.L. testified she had no knowledge of marijuana in the garage, and she would have had no reason to restrict the officers from looking into the garage. As the district court concluded,
“The garage is an extension of the home and an obvious place for a probation officer to inspect during a home visit, especially when an officer is looking for evidence that a probationer may be living beyond his means. In this case, [the officer] received information that Defendant had recently purchased a new car, which indicated he may be living beyond his means. Therefore, this information would have undoubtedly led [the officers] to look in the garage as part of the home visit.”
*692 ROA, Vol. 1 at 60.[2]
Once the officers looked in the garage, the marijuana was in plain view. The garage smelled of marijuana, and the officers could see open boxes of marijuana, some of which had been spilled on the floor. When the officers entered the garage, more marijuana in small plastic bags was sitting in an open container.
In sum, nothing in the record — neither the daughter’s actions nor testimony — suggests A.L. would have withdrawn her previously uniform consent when the officers arrived at the garage door. Once there, opening the garage door alerted the officers to the presence of marijuana.
We reach this conclusion mindful of the purposes of the exclusionary rule. The police did not seek to exploit unconstitutional conduct or profit from their wrongdoing. Here, the officers acted on A.L.’s consent, a source independent from the illegal search of the clothes hamper. The inspection of the garage did not flow from the bedroom search. Rather, it was part of what would otherwise be characterized as a routine home inspection, an inspection specifically directed at determining whether the probationer had purchased any new motor vehicles.
Given this factual record, the district court did not clearly err when it held the officers inevitably would have discovered the marijuana in the garage and that this discovery was not the fruit of an illegal search.
III. Conclusion
For the foregoing reasons, we AFFIRM the district court’s denial of Sanchez’s motion to suppress.

. We also agree with the district court that A.L. had apparent authority to consent to the visit. Apparent authority arises from the reasonable, albeit erroneous, belief that the third party has the authority to provide valid consent. This inquiry is an objective one, based on the “facts available to the officer at the moment.” Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The district court concluded the totality of the circumstances would have led a reasonable officer to believe A.L. was old and mature enough to give consent.

. The district court also concluded the money found in the hamper inevitably would have been discovered given the certainty the officers would have discovered the marijuana in the garage, thereby providing reasonable cause for a search of the entire house under the probation order. That conclusion is not before us in this appeal.