FILED
United States Court of Appeals
Tenth Circuit

**May 18, 2011**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANDRE DARNELL THOMAS,

    Defendant-Appellant.

No. 10-5119

(D.C. No. 4:10-CR-00052-GKF-1)
(N. D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** Chief Judge, **EBEL** and **HOLMES**, Circuit Judges.

Defendant Andre Thomas entered a conditional plea of guilty to one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1), and was sentenced to a term of imprisonment of twenty-seven months. Thomas now appeals, focusing solely upon his handcuffing and claiming the district court erred in denying his motion to suppress the firearm and ammunition. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

*Factual background*

At approximately 6:30 a.m. on February 12, 2010, Tulsa police officer Joel Spitler was dispatched to investigate a suspicious vehicle located behind the Dash Inn, a convenience store located at 1532 East Apache Street. The vehicle was reported to have its lights on and engine running. While en route to the scene, another officer came on the radio and advised that the vehicle in question may also have been involved in a shooting incident the night before.

When he arrived at the Dash Inn, Spitler observed a silver Lincoln, parked in the back of the store, with its lights on and engine running. Spitler got out of his patrol car, approached the suspicious vehicle, and noted that there was a black male, later identified as Thomas, sitting in the driver's seat slumped over the steering wheel. Also, Spitler was able to observe that the car's transmission was in the drive position. Based upon these observations, Spitler tentatively concluded that Thomas was either "injured or he may have been just drunk or high on something which made him pass out." ROA, Vol. 2 at 13. Spitler, however, observed no blood inside the car or at the scene.

Two additional officers, Greg Evans and Gerard Stege, arrived on the scene to assist Spitler. Spitler and Stege determined the doors of the vehicle were locked. Stege then located a stick, leaned over the open sunroof of the vehicle, inserted the stick through the sunroof, and used the stick to push a button that unlocked the doors of the vehicle. The officers chose not to alert or otherwise awaken Thomas "in case he was an

armed robbery suspect or a shooting suspect" who might be armed and dangerous.  Id.

Spitler opened the driver's side door of the car and Evans, with Spitler's assistance, removed Thomas from the vehicle and handcuffed him.

Evans "took control of [Thomas] at that point" and "backed him up a few feet away" from the vehicle.  Id. at 23.  Evans asked "a couple of general questions to see if [he] could get a response from" Thomas.  Id. at 24.  Thomas responded "[a] little bit slower than what [Evans] . . . consider[ed] normal," and was "a little slurred in his speech . . . ."  Id.  Thomas stated "that he [had taken] some footballs" (street slang for Xanax), and "must have fallen asleep."  Id.  Evans proceeded to conduct a pat-down search of Thomas for purposes of officer safety.  As he did so, Evans noticed there was a protruding object in Thomas's right rear pants pocket that appeared to be a handgun.  Evans removed the item, which was a .38 caliber Charter Arms handgun.  Evans then stepped away from Thomas and proceeded to unload live rounds of ammunition from the gun.  As Evans was unloading the gun, Thomas "stated something to the effect that he had the gun only for safety reasons because it was a bad drug area that he was in."  Id. at 28.  This statement was volunteered by Thomas and was not in response to any question posed by the officers.

*Procedural background*

On April 6, 2010, a federal grand jury indicted Thomas on one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1).  Thomas moved to suppress "all evidence obtained" on the grounds that

3

the officers conducted a warrantless search and seizure of his person. Id., Vol. 1 at 9. In a separately filed motion, Thomas also sought to have his statement suppressed on the grounds that the officers failed to advise him of his Miranda rights.

On June 8, 2010, the district court conducted an evidentiary hearing on Thomas's motions. During the hearing, the government presented testimony from Spitler and Evans. Thomas presented no witnesses. At the conclusion of the evidence, the district court orally denied Thomas's motions, stating, in pertinent part:

> The Court concludes that the officers were justified in gaining entry under their community care-taking function. Under the circumstances here it was not unreasonable not to knock on the window. The car was in unusual – an unusual circumstances being at the back of this particular convenience store in a field with the lights on, engine running and in drive. To have knocked on that window with the car in drive with an individual who very likely could have been and, in fact, after the investigative detention turned out to be or very likely appeared to be, I don't have evidence that he was, but appeared to be intoxicated, would have been foolhardy. So it was not unreasonable for the officers to have taken the position and taken the steps that they took. The officers were justified in doing the pat-down search because the defendant appeared to be intoxicated, because they had been informed, although later corrected, that the car may have been involved in a shooting the night before, reasonable suspicion existed to conduct the protective search and the statements made by the defendant were, under the testimony presented to the Court here today, made spontaneously and unprompted by questions by the officers.

Id., Vol. 2 at 34-35.

On June 17, 2010, Thomas entered a conditional plea of guilty to the charge alleged in the indictment. In doing so, Thomas "specifically reserved . . . the right to appeal the [district court's] oral ruling of June 8, 2010, denying [his] Motions to Suppress." Id., Vol. 1 at 29; see id. at 37 ("The defendant reserves the right to appeal the

4

denial of the motion to suppress"). The district court subsequently sentenced Thomas to a twenty-seven month term of imprisonment, to be followed by a three-year term of supervised release.

## II

Thomas challenges on appeal the denial of his motion to suppress the firearm and ammunition, arguing that Evans "lacked a lawful basis for using handcuffs" on him.[1] Aplt. Br. at 4. "Upon review of the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review de novo the ultimate determination of reasonableness under the Fourth Amendment." United States v. Polly, 630 F.3d 991, 996 (10th Cir. 2011) (internal quotation marks omitted). We "may affirm the district court on any basis supported by the record." United States v. McCane, 573 F.3d 1037, 1040 (10th Cir. 2009).

"To suppress evidence as the fruit of [an] unlawful detention or unlawful search," Thomas "must make two showings: (1) that the detention [or search] did violate his Fourth Amendment rights; and (2) that there is a factual nexus between the illegality and the challenged evidence." United States v. Jarvi, 537 F.3d 1256, 1260 (10th Cir. 2008) (internal quotation marks omitted; brackets in original). "In other words, [Thomas] must

---

[1] Thomas effectively concedes on appeal that the officers were justified in approaching his car, assessing the situation, inserting a stick through the open sunroof in order to unlock the car doors, opening the driver's side door, and removing him from the car. Further, Thomas does not contend that the handcuffing constituted an arrest.

5

show that" Evans unlawfully handcuffed him and that, "if [Evans] had not [handcuffed him]," neither Evans nor the other officers "would . . . have ended up" observing and ultimately seizing the firearm in his back pocket.  Id.

Turning to the first of these required showings, it is well established that "[h]andcuffing may be appropriate during an investigative detention—an investigative detention does not become unreasonable just because officers handcuff an individual."[2] Lundstrom v. Romero, 616 F.3d 1108, 1122 (10th Cir. 2010).  "Officers are authorized to handcuff individuals during the course of investigative detentions if doing so is reasonably necessary to protect their personal safety or maintain the status quo."  Id. "However, the use of handcuffs is greater than a de minimus intrusion and thus requires the government to demonstrate that the facts available to the officer would warrant a man of reasonable caution in the belief that the action taken was appropriate."  Id. (internal quotation marks omitted).

Thomas contends, in arguing the illegality of his handcuffing, that any "[l]egitimate concerns that he could pose a danger while inside his vehicle or as a result of being intoxicated were resolved when [he] was removed from his car and was

_____

[2] The record in this case establishes that the officers initiated the encounter with Thomas and his vehicle for several purposes: to determine whether Thomas was in need of medical care; to ensure the safety of Thomas and others persons in the area; and to determine whether Thomas was or had been involved in any wrongdoing (particularly the shooting that allegedly occurred the night before).  This fact does not alter our analysis in any way, since investigative detentions and community caretaking detentions are effectively subject to the same standards.  United States v. Garner, 416 F.3d 1208, 1213 (10th Cir. 2005).

6

cooperative with the officers." Aplt. Br. at 4-5. Although he concedes that his "possible intoxication . . . added a layer of uncertainty because intoxicated people are often unpredictable," id. (internal quotation marks omitted), he argues that "[r]emoving him from the vehicle served to dissipate any concern for safety once he demonstrated full compliance and did not act or speak in an 'unpredictable' way." Id. at 9. Thomas further argues that the "report from an officer who was not present at the scene linking [Thomas's] vehicle to a violent crime the night before did not justify the use of handcuffs" because "[n]o description of the vehicle involved in the crime was provided at the suppression hearing, and [he] was not suspected to match any perpetrator's description." Id. at 5. Lastly, Thomas argues that handcuffing was unnecessary to maintain the status quo because "[t]he officers outnumbered" him three to one "and did not face resistance from him or bystanders." Id. at 10.

We reject Thomas's arguments. To begin with, Officer Evans "was certainly justified in having some concern for his safety" based upon the fact that he and the other officers first encountered Thomas slumped over the steering wheel of his vehicle. Novitsky v. City of Aurora, 491 F.3d 1244, 1254 (10th Cir. 2007) (reaching similar conclusion with respect to officer who encountered individual in a fetal position in the back of a parked car). Specifically, those circumstances would have given rise to an objectively reasonable belief that Thomas may have been under the influence of alcohol or drugs. Officer Evans testified, based upon his experience in dealing with hundreds of individuals who were under the influence of drugs and alcohol, that such individuals "are

7

unpredictable," with some being "respectful" and "others . . . becom[ing] wild on the spur of the moment." ROA, Vol. 2 at 26. Moreover, the fact that Thomas's vehicle was in the drive position, with the engine running, would have reasonably heightened Evans's concern for his own safety and the safety of the other two officers. In particular, an intoxicated driver, left unrestrained, could have attempted to reenter the car and drive away. In addition to these facts, Evans and the other two officers had been advised by another officer of the possibility that Thomas's vehicle may have been involved in a recent shooting incident. Although the officers were not provided with a great deal of detail regarding the prior crime or the suspects involved in that crime, a reasonable officer armed with that basic knowledge would nevertheless have been concerned that Thomas might be armed and dangerous. Considering all of these facts together, we conclude that Thomas "posed [an] objective threat to officer safety," thereby justifying Evans's decision to handcuff Thomas following his removal from the vehicle. Lundstrom, 616 F.3d at 1123.

Even assuming, for purposes of argument, that Evans was not justified in handcuffing Thomas, Thomas cannot establish a factual nexus between his handcuffing and the discovery of the firearm. "To succeed in suppressing the [firearm], [Thomas] must show the discovery would not have come to light but for the government's unconstitutional conduct." United States v. Sanchez, 608 F.3d 685, 691 (10th Cir. 2010) (internal quotation marks omitted; emphasis in original). Understandably, Thomas makes no attempt to argue that, absent the handcuffing, Evans would not have conducted a

8

routine pat-down search or otherwise observed the firearm protruding from Thomas's pocket.

We AFFIRM the district court's denial of Thomas's motion to suppress the firearm and ammunition.

Entered for the Court

Mary Beck Briscoe
Chief Judge