**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**August 24, 2017**

**FOR THE TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

No. 16-5125

JOHN ELDRIDGE CONE,

    Defendant - Appellant.

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:16-CR-00003-CVE-1)**

---

Submitted on the briefs:[*]

Julia L. O'Connell, Federal Public Defender, Barry L. Derryberry, Assistant Federal Public Defender, and Stephen J. Greubel, Senior Litigator, Office of the Federal Public Defender, Northern District of Oklahoma, Tulsa, Oklahoma, for Defendant-Appellant.

Danny C. Williams, Sr., United States Attorney, and Leena Alam, Assistant United States Attorney, Office of the United States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

---

Before **HARTZ**, **MATHESON**, and **MORITZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant John Eldridge Cone pleaded guilty to possession of controlled substances with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C). But he reserved the right to appeal the district court's denial of his motion to suppress the evidence seized from his car by a police officer during a traffic stop. His sole argument on appeal is that the officer exceeded the Fourth Amendment bounds of the stop by asking him about his criminal history and travel plans. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

The proper scope of a traffic stop includes "certain negligibly burdensome precautions" taken for officer safety. *Rodriguez v. United States*, 135 S. Ct. 1609, 1616 (2015). Brief questions about a driver's criminal history are no more burdensome than computer background checks, which circuit precedent has routinely permitted. And because Defendant fails to show the necessary causal connection between the travel-plan question and the discovery of the drugs, we need not address the validity of that question.

## I.    BACKGROUND

On November 29, 2015, Tulsa Police Officer Peter Maher was driving on patrol. About 10:30 p.m. he noticed a white pickup truck crossing through an intersection on 41st Street without a functioning license-plate light, in violation of Oklahoma law.

Without activating his emergency lights, Maher turned around to pursue the truck. He found the truck in a motel parking lot, near another motel well known for criminal activity. In recent months he and his partners had made numerous arrests for narcotics trafficking and firearms offenses in the immediate area. Maher parked his vehicle,

2

approached Defendant's parked truck by foot, and knocked on the driver's side window. About two minutes had passed since Maher first observed the traffic violation.

When Defendant lowered his window, Maher asked for his driver's license and informed him that his car's tag light was not functioning. Defendant acknowledged that he was the person who had been driving on 41st Street. Maher asked if Defendant had "ever been in trouble before" (to which Defendant replied yes), R., Vol. III at 20, and whether he had "been to prison before" (to which Defendant again replied yes), *id.* at 21. Maher asked "For what?" and Defendant falsely claimed that it was for money laundering. *Id.* Maher testified that "the vast majority of the time" he would question those he has pulled over "[t]o assess somebody's criminal history, to determine if they have any violent history in their past that might pose a safety risk to me . . . or my partners during the course of an encounter." *Id*. at 21.

Maher also asked a question along the lines of "What are you doing here?" or "Who are you visiting here?" about which he and Defendant spoke "very, very briefly." *Id*. at 46. Planning to run a warrant inquiry and status check of Defendant's license, Maher followed his typical practice of requesting drivers to step out of their vehicles while he ran the computer check. He said that he makes the request for his own safety, a particular concern here because he was alone. As Defendant got out, Maher noticed the butt of a pistol protruding from underneath the truck's center console. Maher drew his pistol and told Defendant to get on the ground. After a brief exchange Defendant attempted to flee but Maher apprehended him. Officer Kristi Score soon arrived and secured Defendant's truck, where she found the pistol to be loaded. As she unloaded the

firearm, she detected the odor of marijuana emanating from the passenger side of the truck. She opened the passenger-side door and found a backpack containing drugs, including marijuana and methamphetamine, as well as small bags and digital scales.

Defendant was charged with one count of being a felon in possession of a firearm; one count of possessing methamphetamine, cocaine, oxycodone, and MDMA with intent to distribute; and one count of possessing a firearm in relation to a drug-trafficking crime. He moved to suppress the seized evidence, raising two grounds at the suppression hearing: One, he attacked Maher's credibility regarding the events surrounding the stop; and two, he argued that even under the disputed version, the officer conducted an improper investigation by questioning Defendant about subjects that were irrelevant to the tag-light offense. The United States District Court for the Northern District of Oklahoma denied the motion.

On May 4, 2016, Defendant entered into a plea agreement and pleaded guilty to possession of controlled substances with intent to distribute. In return, the government dismissed the remaining two counts. Defendant reserved his right to appeal the denial of his motion to suppress. He was sentenced to 151 months' imprisonment.

## II. DISCUSSION

"When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless they are clearly erroneous, and review de novo the ultimate question of reasonableness under the Fourth Amendment." *United States v. McNeal*, 862 F.3d 1057, 1061 (10th Cir. 2017) (internal quotation marks omitted). A traffic stop must be justified at its inception

and, in general, the officer's actions during the stop must be reasonably related in scope to "the mission of the stop itself." *Rodriguez*, 135 S. Ct. at 1616; *see United States v. Davis*, 636 F.3d 1281, 1290 (10th Cir. 2011). In particular, questioning on matters unrelated to that mission is improper if it "measurably extend[s] the duration of the stop." *Rodriguez*, 135 S. Ct. at 1615 (internal quotation marks omitted). Defendant contends on appeal that the officer's questions about his criminal history and travel plans were unrelated to the mission of the traffic stop and measurably extended its duration.

We first address our standard of review. The government contends that Defendant did not preserve in district court the argument he makes on appeal. At the suppression hearing Defendant argued that Maher's questions were unrelated to the purpose of the traffic stop. He did not, however, assert that they improperly prolonged the stop. The preservation question is thus whether improper prolongation was implicit in Defendant's objection, particularly given that the government's brief in response to the motion to suppress had asserted that questions unrelated to a stop are not grounds for suppression unless they "excessively prolong the stop." R., Vol. I at 23. But we need not answer that question. We can assume that Defendant preserved his appellate issue in the district court because we reject his claim on the merits. We hold that the criminal-history questions were lawful and that Maher's other inquiry had no effect on the later police actions that revealed Defendant's drug offense.

## A. Criminal-History Questions

Maher asked Defendant whether he had "ever been in trouble before," whether he had "been to prison before," and "for what" he had been convicted. R., Vol. III at 20–21.

Defendant argues that these questions had no direct relation to his broken tag light. But an officer's mission during a traffic stop is not limited to determining whether to issue a ticket. *See Rodriguez*, 135 S. Ct. at 1615. The Supreme Court has declared that this mission "includes ordinary inquiries incident to the traffic stop." *Id.* (brackets and internal quotation marks omitted). And recognizing that "[t]raffic stops are especially fraught with danger to police officers," *id.* at 1616 (internal quotation marks omitted), the Court has included among such inquiries "negligibly burdensome" inquiries that an officer needs to make "in order to complete his mission safely," *id.* As the Court stated, "[T]he government's officer safety interest stems from the mission of the stop itself." *Id.* Notable for our purposes, the one case cited by the Court as providing an example of a proper inquiry was this court's en banc decision in *United States v. Holt*, 264 F.3d 1215, 1221–22 (10th Cir. 2001) (en banc), abrogated on other grounds as recognized in *United States v. Stewart*, 473 F.3d 1265, 1269 (10th Cir. 2007). As described in *Rodriguez*, our *Holt* decision "recogniz[ed] [an] officer safety justification for criminal record and outstanding warrant checks." 135 S. Ct. at 1616; *see also United States v. Burleson*, 657 F.3d 1040, 1046 (10th Cir. 2011) ("[A]n officer may run a background check on a motorist to check for warrants or criminal history even though the purpose of the stop had nothing to do with the motorist's history."); *United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) ("While a traffic stop is ongoing . . . an officer has wide discretion to take reasonable precautions to protect his safety. Obvious precautions include running a background check on the driver and removing the occupants from the vehicle." (citations

omitted)); *People v. Cummings*, 46 N.E.3d 248, 252 (Ill. 2016) (recognizing approval of *Holt* in *Rodriguez*).

If running a computer check of a driver's criminal history is justifiable as a "negligibly burdensome" inquiry useful for officer safety, we fail to see how asking the driver about that history could be unreasonable under the Fourth Amendment. The information requested by Maher did not exceed the scope of what a computer check would reveal. A driver's answer may not be as reliable as a computer check but the time involved is much shorter. And just "allowing the officer to ask the question may provide important clues pertaining to safety," such as nervous or evasive responses. *Holt*, 264 F.3d at 1224 (referring to officer's question about presence of firearms); *see United States v. Dion*, 859 F.3d 114, 127 n.11 (1st Cir. 2017) (suggesting that *Rodriguez*'s approval of criminal-record checks could apply to officer questions about a driver's criminal history); *United States v. Palmer*, 820 F.3d 640, 651 (4th Cir. 2016) (in the context of a computer check, saying that "[a] police officer is entitled to inquire into a motorist's criminal record after initiating a traffic stop.").

A recent decision of this court further supports the propriety of asking questions that serve the purpose of officer safety. In *United States v. Morgan*, 855 F.3d 1122, 1125–26 (10th Cir. 2017), the defendant argued that an officer's request for identification exceeded the permissible scope of a bicycle traffic stop because state law did not require a license for bicycling. In upholding the officer's request, we pointed out that "[c]ourts have long recognized that questions concerning a suspect's identity are a routine and accepted part of police investigations." *Id.* at 1126 (internal quotation marks omitted).

7

The justification for this, we said, was that "'[k]nowledge of identity may inform an officer that a suspect is wanted for another offense, or has a record of violence or mental disorder.'" *Id.* (quoting *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 186 (2004)). If asking for a person's identity is justified because it may help to discover "a record of violence," *id.*, surely there is nothing wrong with the more directly relevant (and efficient) inquiry concerning criminal history. We conclude that the criminal-history questions were not unreasonable under the Fourth Amendment.

### B. Travel-Plan Questions

There remains the challenge to Maher's asking Defendant something like "What are you doing here?" or "Who are you visiting here?" R., Vol. III at 46. Defendant's contention is hardly frivolous. In *Holt* we explained that "[t]ravel plans typically are related to the purpose of a traffic stop because the motorist is traveling at the time of the stop." 264 F.3d at 1221. As Defendant points out, however, "[i]nquiring into the Defendant's reason for being at the hotel was not related to the [broken tag light] or vehicular travel, because the Defendant . . . had reached his destination." Aplt. Br. at 12; *see* LaFave, 4 Search and Seizure § 9.3(d) at 534 (5th ed. 2016) (rejecting argument that travel-plan questions are reasonably related to traffic stops for broken tag lights). But we need not address the merits of this argument because Defendant fails to show that suppression of the evidence would be appropriate even assuming a Fourth Amendment violation.

To suppress evidence seized by officers, a defendant must establish a causal link between the alleged Fourth Amendment violation and the discovery of the contested

8

evidence.  *See Hudson v. Michigan*, 547 U.S. 586, 592 (2006) ("Our cases show that but-for causality is . . . a necessary . . . condition for suppression."); *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) ("[A] defendant must adduce evidence at the suppression hearing showing the evidence sought to be suppressed would not have come to light but for the government's unconstitutional conduct.").  In *United States v. Sanchez*, 608 F.3d 685, 687 (10th Cir. 2010), for instance, the defendant's daughter consented to inspection of his home by two probation officers while he was away.  The officers were pursuing information that the defendant was living well beyond the means afforded by his regular job, having bought a new house and car.  *See id.*  During the officers' tour of the house, they looked inside a clothes hamper in the defendant's bedroom closet and found $111,000 in cash.  *See Id.* at 687–88.  One of the officers later entered the garage and saw an open bag of marijuana on the floor.  *See id.* at 688.  We agreed with the district court that the hamper search exceeded the scope of the daughter's consent but that the garage search did not.  *See id.* at 691–92.  The defendant argued, however, that the officers' unlawful search of his clothes hamper tainted their subsequent discovery of the marijuana as "fruit of the poisonous tree."  *Id.* at 691 (internal quotation marks omitted).  We disagreed, stating that "[t]o succeed in suppressing the marijuana, [the defendant] must show the discovery would not have come to light *but for* the government's unconstitutional conduct."  *Id.* (internal quotation marks omitted).  To pursue their inquiry into the defendant's spending, however, the officers would surely have searched the garage anyway and there was no reason to believe that the daughter would have withdrawn her consent.  *See id.* at 692.  We thus concluded that the defendant

9

failed to demonstrate "but for" causation because "no factual nexus connect[ed] the constitutional violation—the search of the clothes hamper—and the inspection of the garage." *Id.* at 691.

Here as well, Defendant fails to show a factual nexus between the travel-plan question and the discovery of drugs within his vehicle. The chain of events after Maher's questioning of Defendant was as follows: Maher asked Defendant to step out of his vehicle while he ran a background check. Upon Defendant's compliance, the pistol was in plain view. The pistol was seized because Defendant, as a felon, could not lawfully possess it. And the securing of the pistol led to the detection of the drugs. Thus, the causal chain flows naturally from the request that Defendant exit his vehicle to the discovery of the drugs. The Supreme Court has upheld the routine traffic-stop practices of asking drivers to exit their vehicles and running warrant checks on them. *See Rodriguez,* 135 S. Ct. at 1615–16. The only causation question, then, is whether Maher would have decided to run a background check and ask Defendant to exit his car if Maher had not previously asked Defendant about the purpose of his travel. The answer is clearly yes. Maher testified that he typically asked drivers to step out of their vehicles while he ran a warrant check. And the district court found that Defendant was asked to exit the vehicle because of officer-safety concerns. Defendant does not challenge this factual finding, nor does he argue that the travel-plan question led to safety concerns. Indeed, there is no evidence in the record regarding how Defendant answered the question. In short, the necessary but-for causal connection between the travel-plan question and the discovery of the evidence is absent.

10

## III.   CONCLUSION

We **AFFIRM** the district court's judgment.